UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JACK MERZIN, *et. al.*,

       Plaintiffs,

vs.

PROVIDENT FINANCIAL
GROUP, INC., *et al.*,

       Defendants.

Consolidated Civil Action
Case No. 1:03-cv-165

Watson, J.
Black, M.J.

### REPORT AND RECOMMENDATION[1]

    This case is before the Court upon the parties' joint Stipulation of Settlement. Upon a thorough review of the pleadings, facts and law, and having conducted a fairness hearing on July 13, 2005, the undersigned magistrate judge hereby reports and recommends that the Settlement Agreement, the Plan of Allocation, and the Plaintiffs' Motion for Attorneys' Fees and Costs should be approved.

I.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

    The negotiated settlement of class action litigation is generally favored by the courts.[2]  This is particularly so with respect to complex class action litigation.[3]  The primary focus for court approval of a class action settlement is whether the proposed settlement is fair, reasonable, and adequate and in the best interests of the class.[4]

---

    [1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

    [2] *See In re Telectronics Pacing Systems, Inc.,* 137 F.Supp. 2d 985, 1008 (S.D. Ohio 2001), *reversed on other grounds*, 221 F.3d 870, 882 (6th Cir. 2000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990).

    [3] *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

    [4] *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997); *see also Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *In re Telectronics*, 137 F.Supp. 2d at 1008; *Brotherton v. Cleveland*, 141 F.Supp. 2d 894, 903 (S.D. Ohio 2001); *In re Dun & Bradstreet*,

In determining whether a proposed settlement is fair, adequate and reasonable, a court looks to several factors, including: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest. When examined under these criteria, there can be no doubt that the Settlement is a beneficial result for the plaintiffs and the members of the classes.[5]

    A.    An Analysis of the Likelihood Of Success On The Merits Supports Approval of The Settlement.

The likelihood of plaintiffs achieving a better result than the Settlement by taking the case to trial on the merits is low. The Court previously dismissed all of plaintiffs' claims but for the Section 11 and 15 claims. The prospects of success on an appeal of any of the dismissed claims was uncertain at best, and plaintiffs would have had to proceed with trial on the 1933 Act claims before they could even appeal the Court's dismissal of Plaintiffs' other claims. Moreover, Plaintiffs' recoverable damages on the remaining 1933 Act claims were severely limited by the Court in its decision on defendants' motion to dismiss. Further, defendants possessed strong arguments that the misstatements were not material and that plaintiffs' losses, if any, were caused by factors other than a depreciation in value resulting from defendants' misstatements and omissions.

By contrast, the Settlement Fund of 1.6 million dollars achieves a prompt and substantial recovery for class members. Indeed, settlement of this case entirely eliminates plaintiffs' substantial risk of no recovery upon trial.

    B.    The Complexity, Expense, and Likely Duration Of The Litigation Favors Settlement.

There is no doubt that this securities class action involves complex factual and legal issues. Thus, if this case were not to settle, the parties would initially face an extensive, lengthy, and exceedingly expensive program of discovery. Thereafter, trial of liability alone would run several weeks and involve numerous attorneys, experts, voluminous documentary and deposition evidence, and the expenditure of enormous

---

130 F.R.D. at 370.

[5] *In re Telectronics*, 137 F.Supp. 2d at 1009; *see also Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 522 (E.D. Mich. October 10, 2003).

amounts of financial and judicial resources.

If this case were tried through to conclusion rather than settled, the litigation would be complex, time-consuming, and expensive, with the chances of obtaining a recovery greater than that provided by the Settlement far from assured. The Settlement secures a substantial benefit for both classes in this highly complex action, undiminished by further expenses, and without the delay, risk, and uncertainty of continued litigation.

    C.    The Stage Of The Proceedings And The Extent Of Discovery Favors Settlement.

The proposed Settlement was achieved after more than two years of litigation involving extensive motion practice and factual investigation. Plaintiffs' counsel conducted substantial factual research, interviewed many potential witnesses, retained and conferred with experts, and conducted a thorough investigation outside the formal discovery mechanisms. Based on this extensive discovery and litigation, plaintiffs' highly competent and experienced counsel are in an excellent position to evaluate their claims responsibly and to conclude that the Settlement is fair, reasonable and adequate.

    D.    The Settlement Is The Result Of "Arm's-Length" Negotiations Among Competent and Experienced Counsel.

The Settlement is the product of intensive, arm's-length negotiations between plaintiffs' counsel and defendants' representatives. As a result of the negotiations, plaintiffs' counsel – highly experienced in securities class action litigation – have made a considered judgment that the proposed settlement in not only fair, reasonable, and adequate, but it is actually an excellent settlement for the classes. The defendants acknowledge this truth. Settlement is favored under these circumstances.

    E.    The Absence Of Any Objections To The Settlement Supports Approval Of The Settlement By The Court.

Over 25,000 copies of the Notice [of the proposed settlement] were mailed to class members, banks, brokers, and financial institutions. A summary notice was also published in the *New York Times*, the *Cincinnati Enquirer*, the *Cincinnati Post* and the financial press. Despite this extensive dissemination of the Notice of the proposed settlement and the Court's fairness hearing, not one single objection to the Settlement has been presented. This is significant. The Court is greatly persuaded by the fact that not one of the class members has objected to the proposed Settlement.

    F.    The Public Interest Favors Settlement.

The Settlement puts an end to long and protracted litigation. Moreover, the

Settlement frees the valuable judicial resources of this Court. Further, the Plan of Allocation permits the fair allocation of settlement proceeds to eligible members of the classes. Thus, the public interest is well served by settlement of this case.

    G.    <u>The Plan Of Allocation is Fair and Reasonable.</u>

The Plan of Allocation provides essentially that the Net Settlement Fund will be divided evenly between the two classes and the proceeds will be distributed among claimants in a manner proportionate to the losses suffered by all other recognized claimants in each class. The values assigned in the Plan of Allocation are fair, reasonable and equitable to all members of the classes.

In sum, the Settlement Agreement and its Plan of Allocation are fair, reasonable, and adequate; they are in the best interests of the class members; and they serve the public interest. Accordingly, the Court should approve the Settlement Agreement and its Plan of Allocation.

II.    THE REQUESTED FEE AND COSTS AWARD IS FAIR AND REASONABLE UNDER THE CIRCUMSTANCES.

Plaintiffs' counsels' request for attorneys' fees is for 20% of the Settlement Fund and for reimbursement of their out of pocket expenses. Notice of this request has been given to the Class, and there has not been a single objection to the requested award of fees and costs.

Counsel prosecuted this action on an entirely contingent basis, for more than two years, placing their investment of legal time and out-of-pocket expenses entirely at risk. Where counsels' efforts result in the creation of a "common fund" to be shared by a class, courts have determined that an award of reasonable fees determined as a percentage of the fund is appropriate. *See Blum v.Stenson*, 465 U.S. 886, 900 n.16 (1984).

    A.    <u>Plaintiffs' Counsel Are Entitled To A Fee As A Percentage Of And From The Common Fund That They Obtained.</u>

Courts generally favor awarding fees from a common fund based on the percentage of the fund method. *Id.* (In common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class ... .").

    B.    <u>The Requested Fee Award Is Well Within The Appropriate Range Of Percentage of Fund Awards.</u>

Courts routinely award fees ranging from 20 to 50 percent of the common fund. In fact, fee awards in the range of 30% are typical in common fund cases. The request for attorneys fees constituting 20% of the settlement fund is at the *low end* of the range of prior percentage awards made in this District and elsewhere. This truth militates in favor of court approval of the request for attorneys fees.

    C.    <u>The Requested Fee Award Is Reasonable Under The Circumstances.</u>

Upon a close examination of the factors considered appropriate in evaluating whether the fees sought are reasonable, *see Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974), it is irrefutable that the plaintiffs' application for fees herein is entirely reasonable under the circumstances.

        1.    <u>The Value of The Benefit Achieved Supports The Requested Award.</u>

The Settlement provides for a cash payment of $1,600,000.00 plus interest for the benefit of the classes. As a further benefit, defendants have agreed to pay the costs of notice and claims administration of the Settlement Fund. While plaintiffs believe that they would likely have prevailed on their claims against defendants, there is a significant risk that the classes could recover nothing.

This Settlement eliminates the significant risk of no recovery or recovery of an amount substantially less. Instead of facing costly litigation, including the time and expense involved in a trial *and* an appeal, class members who suffered compensable loss and who submit acceptable Proofs of Claim as described in the Stipulation of Settlement will recover a portion of their losses from transactions in PRIDES securities and/or PFGI shares. This is an excellent result achieved for the benefit of all of the members of each class, and this excellent result supports the requested fee award.

        2.    <u>Public Policy Considerations Support The Requested Award.</u>

Adequate compensation to encourage attorneys to assume the risk of litigation, especially in complex securities class action litigation, is in the public interest. Indeed, without adequate compensation for plaintiffs' counsel, victims of securities fraud would be prevented from pursuing their claims. "Fair awards in [securities fraud] cases . . . encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance." *In re Warner Communications Sec. Litig.*, 618 F.Supp.

735, 750-51 (S.D.N.Y. 1985).[6]

Without the willingness of plaintiffs' counsel to assume the task, members of the classes would not have recovered. As this case clearly involves actionable securities law violations, and as society benefits from strong advocacy on behalf of security holders, public policy favors the granting of the requested fee award.

    3.    The Risks of the Litigation and the Contingent Nature of The Fees Support the Award.

At the time that plaintiffs' counsel undertook to prosecute this action, plaintiffs' counsel understood the substantial risks they were assuming without any assurance of being compensated for their efforts. Indeed, there is an inherent risk in securities fraud class action litigation. And, in view of the skill of defendants' counsel and the legal and factual difficulties of this action, the risk was substantial. If plaintiffs' counsel had been unable to settle this action or otherwise prevail on the merits, the loss of time and effort would have been enormous.

In addition, plaintiffs' counsel prosecuted this action on a wholly contingent basis. Usually, the contingent nature of counsel's representation is a prime factor in approving a substantial upward adjustment of the lodestar.[7] Here, however, plaintiffs' counsels' application for an award of twenty percent (20%) of the settlement fund actually results in a negative multiplier, or a downward adjustment, of plaintiffs' counsels' lodestar.

    4.    The Value of the Services On An Hourly Basis Supports the Award.

Plaintiffs' counsel have expended approximately 2,622 hours in the prosecution of this action. The combined lodestar of their time, representing work by attorneys from several separate law firms, is approximately $1,022,331.75, excluding expenses. Plaintiffs' counsel's requested fee award, however, is more than $700,000.00 less than the approximate value of counsels' combined efforts measured by hourly rates.

---

[6] *See also Basile v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 640 F.Supp. 697, 702 (S.D. Ohio 1986); *In re Dun & Bradstreet*, 130 F.R.D. at 373.

[7] *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196-97 (6th Cir. 1974); *see also In re Dun & Bradstreet*, 130 F.R.D. at 372; *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F.Supp. 160, 164 (S.D.N.Y. 1989) (stating that a contingent fee risk is the most important factor in awarding a multiplier).

### 5. The Complexity of the Litigation Supports the Award.

The prosecution of any class action in the securities area presents inherently complex and novel issues.[8]  Moreover, the "complexity of a case is compounded when it is certified as a class action[, as] [m]anagement of the case, in and of itself, is a monumental task for counsel and the Court."  *Miller v. Woodmoor Corp.*, 1978 WL 1146, at *4 (Dist. Colo. September 28, 1978).  The present action is no different.

### 6. The Quality of the Representation Supports the Award.

Plaintiffs' counsel are nationally known leaders in the fields of securities class actions and complex litigation.  The quality of the representation is demonstrated by the benefit achieved for the classes and the efficient prosecution and resolution of the action.

The quality of opposing counsel is also important when the court evaluates the services rendered by plaintiffs' counsel.[9]  Prominent and extremely capable counsel represented defendants and vigorously defended this action.  The ability of plaintiffs' counsel to obtain a favorable result for the classes in the face of such formidable opposition further evidences the superior quality of their work.

### 7. The Expenses Incurred Are Reasonable.

The expenses for which reimbursement is sought herein are the type of expenses for which "the paying, arms' length market" reimburses attorneys, and these expenses are properly chargeable to the Settlement Fund.[10]

Accordingly, in sum, the plaintiffs' requested award of fees and costs, to which not one single objection has been lodged, is reasonable under the circumstances, and this Court should approve the award.

Thus, as set forth herein, the Settlement Agreement, its Plan of Allocation, and the Motion for Attorneys' Fees and Costs should be approved by the Court.

---

[8] *See In re King Res. Co. Sec. Litig.*, 420 F.Supp. 610, 632 (Dist. Colo. 1976) (stating that securities litigation involves "unique and substantial issues of law" and "difficult, complex, and oft-disputed . . . questions regarding computation of damages").

[9] *See In re Warner Communications Sec. Litig.*, 618 F.Supp. at 749; *Arenson v. Board of Trade*, 372 F.Supp. 1349, 1351 (N.D. Ill. 1974).

[10] *See Continental Illinois Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).

It is therefore reported and recommended that the Court enter Final Judgment as follows:

## ORDER OF FINAL JUDGMENT

This consolidated action came on for hearing before this Court on July 13, 2005, pursuant to the Order of this Court entered April 22, 2005 (the "Preliminary Approval Order"), and on the application of Plaintiffs and Provident Financial Group, Inc., Provident Bank, PFGI Capital Corporation (collectively "Provident"), Robert L. Hoverson and Christopher J. Carey ("Individual Defendants"), Provident and the Individual Defendants are referred to as "Defendants", for the approval of the Settlement of this action. The Settlement Notice was provided by mail, and the Summary Notice was published, as required by the Preliminary Approval Order. The Court having considered all evidence and submissions in the record and having heard from all interested parties, hereby finds and determines as follows:

1. The Preliminary Approval Order provides for the mailing of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Settlement Notice"), which, among other things, (i) describes the terms of the Stipulation of Settlement (the "Stipulation"); (ii) describes the certification of the Common Stock and PRIDES Classes (collectively the "Classes") and (iii) directed that the Settlement Notice be mailed to the members of the Classes who can be identified from the records of Provident and that the Summary Notice be published once in the Cincinnati Enquirer and New York Times.

The Court hereby finds that the Settlement Notice was initially mailed, postage prepaid, to the members of the Classes on May 12,, 2005.  In addition, the Summary Notice was published in the *New York Times*, the *Cincinnati Enquirer* and the *Cincinnati Post* on May 23, 2005.  All members of the Class have, accordingly, been notified of the Court's hearing held on July 13, 2005, and have been afforded an opportunity to be heard with respect to final approval of the matters set forth in the Settlement Agreement.  The Settling Parties have complied with the notice requirements, in accordance with the Order of Preliminary Approval entered by the Courts.  Such notice constituted the best notice practicable under the circumstances and provided individual notice to all Class Members who could be reached with reasonable effort.  Further, such notice constitutes valid, due and sufficient notice to Class Members, complying fully with due process and Federal Rules of Civil Procedure.

2. The terms and conditions of the Stipulation constitute a good faith compromise of disputed claims and defenses, and are the product of arm's length bargaining among and between Plaintiffs and Defendants.

3. The Court, having reviewed the Stipulation, the memoranda and affidavits submitted in connection herewith, and the arguments of counsel, finds the terms and conditions of the Stipulation to be fair, reasonable and adequate as to the members of the Classes, and that all such terms are lawful, binding and enforceable with respect to Plaintiffs and Defendants, individually and in their representative capacities, including all persons or entities who are members of the Classes.

4. No member of the Classes has filed any written notice of intent to appear and object to the Stipulation or to Plaintiffs' Counsels application for the payment of attorneys' fees and expenses, as is provided for in the Settlement Notice, and no member(s) of the Classes appeared to make any such objection at the Settlement Hearing.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

The Court, pursuant to Federal Rule of Civil Procedure 23(c), and in accordance with the Stipulation identified above, excludes from the Classes as certified herein those persons who have filed a timely request to be excluded from the Class. A copy of one exclusion was filed with the Court on July 8, 2005 and the copy of two additional exclusions were filed on July 12, 2005.

1. The Court hereby grants final approval to the Stipulation and holds that the settlement of all claims among and between Plaintiffs and Defendants pursuant to and as described in the Stipulation is fair, reasonable and adequate and in accordance with the terms and provisions of the Stipulation.

2. All claims asserted by each Plaintiffs and each Class Member, arising out of the transactions alleged in the Consolidated Amended Complaint and Complaints filed in this litigation and the Settled Claims defined in the Stipulation, against Provident and any of its affiliates, subsidiaries, predecessors, successors, assigns, present and former agents, representatives, officers and directors and against the Individual Defendants, Robert L. Hoverson and Christopher J. Carey, and any of their personal representatives, heirs,

administrators, executors, successors and assigns, individually and/or collectively, shall be and hereby are dismissed on the merits and without costs.

       3.       Plaintiffs and the members of the Classes individually and as a whole, and each of their heirs, executors, administrators, beneficiaries, predecessors, successors, assigns, other than Class members who have opted out of this lawsuit, are hereby barred and enjoined from prosecuting any "Settled Claims" against any of the "Released Parties" defined as follows:

       "Released Parties" means Provident Financial Group, Inc., Provident Bank, PFGI Capital Corporation, Robert L. Hoverson, and Christopher J. Carey, and their past or present subsidiaries, parents, successors and predecessors, and all entities in which PFGI acquired a controlling interest during the period March 30, 1998 to March 5, 2003, including but not limited to Fidelity and OHSL, and each of their current and former officers, directors, agents, employees, attorneys, advisors, investment advisors, and any person, firm, trust, corporate officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and/or legal representatives, heirs, successors-in-interest or assigns.

       "Settled Claims" means any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued,

liquidated or un-liquidated, at law or in equity, matured or un-matured, whether class or individual in nature, including both known claims and unknown claims, (a) that have been asserted in this Action by the Class Members or any of them against any of the Released Parties, and (b) that arise out of or are based upon on: (i) the purchase or acquisition during the Settlement Class Period of PFGI common stock; or (ii) the purchase or acquisition of Provident Income PRIDES securities pursuant to the offering of said securities and projections disseminated by PFGI in connection therewith; or (iii) the acquisition of PFGI common stock by virtue of the merger of OHSL into PFGI pursuant to the OHSL Agreement and/or the OHSL Proxy Statement; or (iv) the acquisition of PFGI common stock by notice of the merger of Fidelity into PFGI, pursuant to the Fidelity Agreement and/or the Fidelity Proxy Statement.

4. Defendants and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by the Defendants or any of them or the successors and assigns of any of them against any of the Lead Plaintiffs, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (the "Settled Defendants' Claims").

5. The Court also approves the Plan of Allocation as fair, reasonable and

adequate.

6. The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein. In addition, based upon the record in this case, the independent analysis of the Court, the statements of counsel for the parties and upon all publicly available information, the Court finds that the Settlement satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of the Private Securities Litigation Reform Act of 1995 and the Action is hereby dismissed with prejudice and without costs, except as provided in the Stipulation, as against the Defendants.

7. All Class Members are bound by this Judgment and by the Stipulation, including the releases provided for herein.

8. The Stipulation is fair, reasonable and adequate and is hereby finally approved in all respects, and the Settling Parties are hereby directed to consummate and perform its terms.

9. The Litigation is dismissed with prejudice without costs to Defendants other than the costs set forth in the Stipulation.

10. The Court has reviewed Plaintiffs' Memorandum in Support of Plaintiffs' Joint Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and hereby approves attorneys' fees in the amount of $ 320,000.00 and costs in the amount of $ 200,504.29 to be paid in accordance with the terms of the Stipulation. Plaintiffs' Lead Counsels' attorneys fees and expenses shall be paid to Plaintiffs' Lead Counsel, to be

distributed to other Plaintiffs' counsel, based upon their relative contribution to this Action.

11. Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order of Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class.

12. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

IT IS SO RECOMMENDED.

Date:  July 20, 2005                                             s/Timothy S. Black

                                                                  Timothy S. Black
                                                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JACK MERZIN, *et al.*,

       Plaintiffs,

vs.

PROVIDENT FINANCIAL
GROUP, INC., *et al.*,

       Defendants.

Consolidated Civil Action
Case No. 1:03-cv-165

Watson, J.
Black, M.J.

**NOTICE**

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).